# Walker, Appellant, *v.* Bergbigler.

*Tax sales—Seated and unseated lands—Sale by county commissioners—Act of June 2, 1891, P. L.* 168.

The Act of June 2, 1891, P. L. 168, entitled " An act to enable the county commissioners of several counties to sell any real estate which they may acquire and make deed therefor," does not in terms, nor is it intended to apply to seated or unseated lands purchased at a treasurer's sale by the county commissioners for the nonpayment of taxes.

A sale which is based upon the proceedings provided in the Act of June 2, 1891, P. L. 168, cannot be sustained as valid under the Acts of March 13, 1815, 6 Sm. L. 299, March 29, 1824, P. L. 167, and July 8, 1885, P. L,

268, on the theory that the provisions of the act of 1891, should, so far as they were followed, be held to be mere surplusages.

Argued Oct. 21, 1903.  Appeal, No. 160, Oct. T., 1903, by plaintiff, from judgment of C. P. Butler Co., Sept. T., 1902, No. 14, on verdict for defendant in case of Victor B. Walker v. John Bergbigler.  Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.  Affirmed.

Ejectment for land in the second ward of the borough of Butler.  Before THOMAS, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Joseph B. Bredin*, with him *Samuel Walker*, for appellant.

*Lev. McQuistion*, with him *J. C. Vanderlin*, for appellee.

OPINION BY MR. JUSTICE DEAN, January 4, 1904:

This was an ejectment for a lot of ground in the borough of Butler, Butler county.  The title of both parties starts from a common source, one Samuel Crawford who was the owner of the lot in 1891.  In 1893 it was assessed at a valuation of $300 with county, poor, borough and school taxes, and the duplicate for that year placed in the hands of the collector; on January 31, 1894, the collector returned the lot for nonpayment of taxes on the seated list to the county commissioners, who certified it to the county treasurer; the taxes remaining unpaid for two years, the treasurer advertised and sold it at public sale to the county commissioners delivering to them his deed for the lot acknowledged before a justice of the peace.  The commissioners held the lot for five years and then petitioned for leave to sell it, among other lands, at public sale under the provisions of the act of 1891.  The court directed a public sale; the commissioners gave notice by advertisement and offered it for sale February 11, 1902; it was knocked down to Victor B. Walker, this plaintiff, on his bid of one dollar; the commissioners made

report to the court of the sale which was approved and deed acknowledged to Walker, March 28, 1902. This made up the plaintiff's paper title.

Samuel Crawford and Catherine, his wife, in the year 1893 made an assignment, with other property of this lot to John V. Ritts under the insolvent laws for the benefit of Crawford's creditors. Ritts on April 6, 1895, conveyed it to J. W. Davis. On October 31, 1898, John Bergbigler obtained a judgment against Davis and on execution thereon seized and sold the lot, and himself became the purchaser; the sheriff acknowledged deed to him in open court, December 10, 1898. This constitutes defendant's paper title. Practically this was all the material evidence in the cause.

The court below was of opinion that the law conferred no authority upon the county commissioners to make the sale under the act of 1891 in the method adopted by them, and that even if they had such authority by that act, they had none to sell for a bid of $1.00 to Walker, or for a bid not equal to the taxes and costs, and these amounted to $12.17; it consequently directed a verdict for defendant and plaintiff brings this appeal.

We think there was no authority to make sale under the act of June 2, 1891; that act does not in terms, nor was it intended to apply to seated or unseated land purchased at treasurer's sale by the county commissioners for nonpayment of taxes. Full provision for the sale of unseated lands purchased by county commissioners was made by the acts of 1815 and 1824; then the act of 1885 subjected seated lands to the same provisions. All the varied facts of valuation, method of assessment, duties of owners and advertisements have been passed upon by the courts. The construction of these acts has been so well settled by numerous decisions of this court, that there is no longer any doubt as to their meaning. To sweep away the whole system, in force for a century, and start entirely on a new one, will again lead to almost endless contest, will plunge the profession, the courts and landowners in a sea of trouble, perplexing doubt, and vexatious litigation. That such was the intention of the legislature by the act of June 2, 1891, must appear very plain before we adopt that view.

We do not think the act, from its terms, was intended to ap-

ply to seated and unseated lands bought in by the commissioners at Treasurer's sales.   The act consist of but two sections, the first is :

"That whenever the several counties of the Commonwealth or any of them shall become possessed of any real estate and shall acquire or shall have acquired title thereto, in any manner, if at any time the County Commissioners of the respective county or counties owning the same desire to sell such real estate, they shall have power to do so, and make a deed under their hands and seals as commissioners, with the seal of the respective county or counties attached, and the same shall be and be deemed and taken to be a good and lawful conveyance in fee simple."

The second section sets out the method of proceeding, by application to the court, advertisement, etc.

Notice the absence of any descriptive words which would identify the real estate as lands sold for unpaid taxes ; two or three words would have put the purpose to reach such lands beyond doubt.   It does not use the word "land " as in all previous legislation on tax sales, but says real estate.   The directory details of the method of making sales are far more cumbersome and burdensome than in the previous legislation providing for the sales of unseated and seated lands bought in for nonpayment of taxes.   There is no repealing clause in the act, therefore, if the effect is to repeal previous legislation on the same subject, that result must come from the fact that the provisions of the later act are inconsistent with or repugnant to those of the prior ones, so inconsistent, that they cannot stand together.   There is no inconsistency at all, if we treat the act as applying to other real estate owned by the county but not bought at treasurer's sales for nonpayment of taxes.   Counsel for appellant asks, if not intended to embrace such lands, what lands were meant?   What was the act passed for ?   We answer, the county not seldom becomes the owner of other real estate which it wants to dispose of ; in many of the counties they have taken title to poorhouse farms and lands, to squares and open parks, which because of abandonment of ancient sites for poorhouses, courthouses and jails, they wish to sell, and there may be other real estate, the title to which is in the county, but which it has not bought in as either seated or unseated land at treasurer's sale for nonpayment of

taxes.   We think with the  court below, that  the sale of  this lot under the act of 1891 for nonpayment of taxes was wholly without authority and passed no title.

It is argued  that even if  the act of 1891 did  not apply, the provisions of  that act so far as  they were followed should be held to be mere surplusage, and the sale would be still valid under the acts of 1815, 1824 and 1885.   If  the sale was not made under that act, no valid  sale was made, because notice and all proceedings are only sustained by those in the act pointed out.

This is the same conclusion arrived at by the common pleas of Cambria county, Davis v. Beers, 204 Pa. 288 ; the opinion touching the interpretation of the act of 1891 is on a reserved point by Judge LOVE, specially presiding, and affirmed in a per curiam by this court reported in 12 Pa. Dist. Rep. 434.

As to the argument, that the act of 1891, is unconstitutional, because the proviso to it, in effect, excepts Philadelphia county from its operation, it is  sufficient to say that  we  have decided the issue on the first ground, and it is not necessary, therefore, to pass upon the constitutionality of  the act.

The judgment of the court below is affirmed.